**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED
AUG 23 2010
AT 8:30_____M
WILLIAM T. WALSH
CLERK

```
SAMUEL ZUCKER d/b/a SAMUEL       :
ZUCKER REALTY,                   :
                                 :
                Plaintiff,       :     Civil Action No.: 10-868 (FLW)
                                 :
    v.                           :         OPINION
                                 :
AARON ROTTENBERG a/k/a AHARON    :
ROTTENBERG, et al.,              :
                                 :
                Defendants.      :
                                 :
```

**<u>WOLFSON, United States District Judge</u>:**

Presently before the Court is Plaintiff Samuel Zucker's ("Zucker's") motion for default judgment against Defendants Aaron Rottenberg a/k/a Aharon Rottenberg and Sheilah Rottenberg (collectively, "the Rottenbergs") and Mr. Rottenbergs' company, Defendant Yomah, Inc. ("Yomah"), seeking to foreclose upon the Rottenbergs' home. The remaining defendants in this action are Clayton Block Company, Inc., Ralph Clayton & Sons, Thomas Beirszcad Masonry, Rachel Reiner, Joseph Reiner, Edward F. Liston, Jr., Esq., Dinaso & Sons Building Supply Co., and Sovereign Bank (collectively, "the remaining defendants"), which parties have placed judgment liens on the Rottenbergs' home. For the following reasons, Plaintiff's motion is granted.

BACKGROUND

Plaintiff Zucker filed suit against the Rottenbergs, and other defendants, on February 22, 2010, seeking foreclosure on the Rottenbergs' home, 207 Carey Street, Lakewood, New Jersey. This dispute stems from a loan made by Zucker to the Rottenbergs to finance the building of a

1

residential development in Lakewood, New Jersey ("the Development"). Zucker Decl., ¶¶ 2, 4. The loan monies were to serve as the purchase money deposit for the Development. Id., Exh. B, Letter from Reuel E. Topas, Esq. dated June 18, 2004 ("Topas Letter"), ¶ 5. The loan was made on February 9, 2003 in the amount of $750,000, and was secured by a mortgage on the Rottenbergs' home. The mortgage was duly recorded March 11, 2003 in Mortgage Book 11284 at Page 1873. Id. at ¶ 2; id., Ex. A. The $750,000 investment was allocated at $10,000 per house, with an anticipated profit of $3,750 per house. Id. at ¶¶ 5-6. In total, the agreement contemplated a profit of $262,500 and was to be completed in twenty-two months. Id. at ¶ 6. After the first twenty-two months, interest would accrue at ten percent (10%) per annum. Id.

The following year, on June 18, 2004, Zucker invested an additional $515,000 with Mr. Rottenberg and Mr. Rottenbergs' corporation, Defendant Yomah. Id. at ¶ 3-4. In connection with this additional investment, the Rottenbergs and Yomah entered into a written contract with Zucker. Topas Letter at ¶¶ 1-2. Per the contract, Yomah agreed to execute a mortgage note in the amount of $515,000, and the Rottenbergs agreed to execute a Personal Guaranty and a Mortgage Modification Agreement ("MMA").[1] The MMA "modified and amended" the initial mortgage "to further serve as security for the repayment of [the Yomah] loan." Id. at ¶ 3; Zucker Decl., Exh. C, Mortgage Note at ¶ 5. Each of the aforesaid documents were executed by Yomah and the Rottenbergs, and the MMA was recorded in the County Clerk's office for Ocean County, New Jersey on July 14, 2004.

---

[1] Zucker's Declaration avers that this investment was originally made by himself and his son, but that Zucker subsequently purchased his son's interest. Id. at ¶¶ 3, 7. Because the contract memorializing the parties agreement, discussed *infra*, was not executed by Zucker's son, I exclude him from my restatement of the facts here. To be sure, the Mortgage Note and MMA is denoted as between Yomah and "Samuel Zucker Realty." Nothing in the record indicates that Zucker's son has any ownership interest in Samuel Zucker Realty.

2

Importantly, the contract explicitly provided that "New Jersey law shall govern this transaction," Id. at ¶ 10, and "[a]ny and all disputes herein shall be submitted for Rabbinic Arbitration . . . or any other Rabbinic arbitrator or court agreed to in writing by the parties. The written decision of any such arbitrator or court shall be final, binding and enforceable in the Superior Court of New Jersey, Ocean County," id. at ¶ 9.

Mr. Rottenberg built and began to sell the homes in the development, but "ran into financial trouble" toward the end of the development process. Zucker Decl., ¶ 7. As a result, the Development was sold to another developer. That developer paid Zucker $283,000 on September 22, 2009, and Zucker unsuccessfully attempted to recover the remainder of the loan monies from the Rottenbergs. Id. at ¶ 8. Zucker and the Rottenbergs proceeded to arbitrate their dispute in Rabbinal Court per a written agreement dated October 20, 2009. Id.; id., Exh. G, Agreement to Submit to Arbitration.

The Rabbinal Court issued its decision on December 29, 2009, in favor of Zucker and against the Rottenbergs and Yomah. Id., Exh. I, Rabbinical Court Ruling.[2] That religious court found that Zucker invested a total of $700,000 and had received $283,000 toward that principal from the new developer at the closing on September 22, 2009, leaving a remaining principal balance due of $417,000.[3] Id. at ¶¶ 1-2. Upon calculating the principal amount plus interest due, the Rabbinical Court concluded that the total amount due as of September 22, 2009 was $829,493, which included the remaining principal balance of $417,000 plus "*Isske*" (interest) of

---

[2] This ruling denotes Zucker and his son as plaintiffs. Zucker does not explain why his son is included in this judgment when the son previously sold his interest to Zucker.

[3] The ruling found that Zucker "invested . . . $515,000, plus $185,000 (during the month of June {20}04) ...." Id. at ¶ 1. It is not clear from record how the Rabbinical Court reached the $185,000 amount.

3

$412,493. Id. The Rabbinical Court, further, ruled that Zucker was entitled to "an additional 10% in *Isske*" on the remaining principal balance of $417,000 from September 22, 2009 onward.

Shortly after the Rabbinical Court entered its ruling, Zucker sought to foreclose his mortgage on the Rottenbergs' home. On January 19, 2010, Zucker mailed by certified mail, return receipt requested, a Thirty (30) Day Notice of Intention to Foreclose Mortgage as required by New Jersey's Fair Foreclosure Act, N.J.S.A 2A:50-63, et seq. ("Fair Foreclosure Act" or "the Act"). This notice described the past due payments as $829,493, which represented the "$417,000 principal plus $412,493 in interest ...." found due by the Rabbinical Court. See Greenberg Cert., ¶ 7, id., Exh. A, Honig & Greenberg Letter dated January 19, 2010.

The instant foreclosure complaint was filed on February 22, 2010. The complaint names not only the Rottenbergs and Yomah as defendants, but also names several judgment lienholders. These lienholders are Sovereign Bank, Rachel Reiner, Joseph Reiner, Edward F. Liston, Jr., Esq., and Dinaso & Sons Building Supply Co., and Thomas Bierszcad Masonry. Compl. ¶¶ 37-43. Sovereign Bank's lien is for $12,985,270.83. Id. at ¶ 44. The remaining liens range from $10,350.20 through $160,836.94 in amount. See id. at ¶¶ 37-43.

In response to the complaint, Sovereign Bank filed a non-contesting answer on March 24, 2010. (A non-contesting answer is one that fails to "either contest the validity or priority of the mortgage or lien being foreclosed or create an issue with respect to plaintiff's right to foreclose it." N.J. Ct. R. 4:64-1(c)(2).) All other defendants have failed to plead or otherwise respond to Plaintiff's Complaint. On March 31, 2010, entry of default was entered against the Rottenbergs and Yomah, as well as Defendants Rachel Reiner, Joseph Reiner, Edward F. Liston, Jr., Esq., and Dinaso & Sons Building Supply Co.. On April 14, 2010, an entry of default was entered against Defendant Thomas Bierszcad Masonry.

Per the Fair Foreclosure Act's dictates, Zucker mailed a 14-day Notice of Entry of Judgment to the Rottenbergs on April 19, 2010. Greenberg Cert., ¶ 8. The Rottenbergs responded to this notice by way of letter dated April 26, 2010. In that letter, the Rottenbergs state: "As per your notice dated April 19, 2010, we are hereby advising you that we believe that we will be able to make the required payments on this loan within 45 days of today." Id., Exh. C. Viewing this notice as insufficient under the Fair Foreclosure Acts' right to cure provision, N.J.S.A. 20:50-58, see id. at ¶ 10, Zucker continued to prosecute the instant action by moving for default judgment on May 17, 2010.

DISCUSSION

*Default Judgment Standard*

Rule 55 of the Federal Rules of Civil Procedure sets forth the requirements for both entry and grant of a default judgment. The rule contemplates entry of a default when a defendant has "failed to plead or otherwise defend" a specific action. Fed. R. Civ. P. 55(a). The Third Circuit has held that the "or otherwise defend" clause is "broader than the mere failure to plead." Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 917 (3d Cir. 1992) quoted in Jeweled Cross Co. v. Buy-Rite Designs, Inc., 2010 WL 143689 at *2 (D.N.J. Jan 12, 2010). Consequently, default judgment may be entered against a party who, for example, failed to comply with a court's order(s); file a pre-trial memorandum; or respond to a discovery request. See Hoxworth, 980 F.2d at 918; Jeweled Cross Co., 2010 WL 143689 at *2. Additionally, default judgment may be entered against a party for failure to appear at a pretrial conference after the filing of an answer. See e.g., Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.");

5

Chanel, Inc. v. Craddock, 2006 WL 469952 at *2 (D.N.J. Feb. 27, 2006).

The plaintiff may seek the Court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2). Nationwide Mutual Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 Fed.Appx. 519, 521 n. 1 (3d Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be entry of default as provided by Rule 55(a)."). After a default has been entered, "the clerk of the court may enter default judgment if the plaintiff's claim is for a sum certain; otherwise the court may enter default judgment upon application of the non-defaulting party." Chanel, Inc. v. Craddock, 2006 WL 469952 at *2 (D.N.J. Feb. 27, 2006) discussing Fed. R. Civ. P. 55(b). Where the defaulting party has appeared in the action, that party is entitled to receive written notice three (3) days prior to the grand of default judgment. See Fed. R. Civ. P. 55(b)(2).

The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we repeatedly state our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). See also Super 8 Motels, Inc. v. Kumar, 2008 WL 878426 at *7 (D.N.J. Apr. 1, 2008). Thus, before imposing the extreme sanction of default, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default.[4] Doug Brady, Inc. v. N.J.

---

[4] The case of Poulis v. State Farm and Casualty Co., 747 F.2d 863 (3d Cir. 1984) lists additional factors that several district judges have adopted as considerations prior to granting a default judgment: (1) whether there are material issues of fact or substantial public issues; (2) whether the default is largely technical; (3) whether the plaintiff has been prejudiced by the delay; (4) whether the defendants know or should know that they are subject to a default; (5) whether the default was caused by a good faith mistake or excusable neglect; (6) whether the default might later be set aside; and (7) whether a large amount of money is involved. Id. at 868-

Bldg, Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987) ("[W]e have further required the district court to make explicit findings concerning the factors it must consider in rendering judgment by default or dismissal, or in declining to reopen such judgment")). See also Federal Home Loan Mortgage Corp. v. B&C Inv. Assocs., 1998 WL 467105, *4 (D.N.J. Aug. 11, 1998); Hritz, 732 F.2d AT 1181 (citing the existence of a meritorious defense as the most important factor that the court must consider). In weighing these factors, district courts must remain mindful that, like dismissal with prejudice, default is a sanction of last resort. See Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867-68 (3d Cir. 1984) ("We reiterate what we have said on numerous occasions: that dismissals with prejudice or defaults are drastic sanctions"). As a result, district courts are directed to resolve all doubt in favor of proceeding on the merits. Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987).

*New Jersey Foreclosure Requirements*

Prior to instituting a foreclosure action in New Jersey on a residential property, the lender must give the debtor a 30-day advance notice of its intention to commence foreclosure. N.J.S.A. 2A:50-56a. This "Notice of Intention to Foreclose," required by the Fair Foreclosure Act, is required on residential mortgages, which mortgages include security interests in a house where the debtor resides. See N.J.S.A. 2A:50-55. The Act, further, instructs foreclosing lenders to mail a notice, at least 14 days prior to the lender's submission in support of an entry of a foreclosure judgment, advising the debtor that any right to cure the default will be lost upon entry of final judgment. N.J.S.A. 20A:50-58(a). A copy of this letter must be attached to the application for final judgment. Id.

---

70.

Upon receipt of this letter, the debtor may "mail to the lender a statement in which the debtor in good faith *certifies* as true that there is a reasonable likelihood that the debtor will be able to provide payment necessary to cure the default within 45 days of the date ...." Id. at ¶ (a)(2) (emphasis added). If the debtor so responds, the lender may not move for entry of a final judgment until the 46th day after the date the notice was received by the debtor. Id. at ¶ (a)(3). See also Obtaining Final Judgment in Foreclosure, 21 NJPRAC § 33:36 (Rev. 3d ed.).

The procedure for obtaining a final judgment in foreclosure is set forth in New Jersey Court Rule 4:64-1. Where the foreclosure complaint has not been contested,

> on motion on 10 days notice if there are no other encumbrancers and on 30 days notice if there are other encumbrancers, and subject to paragraph (h) of this rule, may enter final judgment upon proof establishing the amount due. Notice shall be served on mortgagors and all other named parties obligated on the debt and all parties who have appeared in the action including defendants whose answers have been stricken or rendered noncontesting. The notice shall have annexed a copy of the affidavit of amount due filed with the court. Any party having the right of redemption who disputes the correctness of the affidavit may file an objection stating with specificity the basis of the dispute and asking the court to fix the amount due. Defaulting parties shall be noticed only if application for final judgment is not made within six months of the entry of default....

R. 4:64-1(d).[5] In support of this motion, the moving party must provide an affidavit of proof evidencing the "indebtedness, assignments, . . . and any other original document upon which its claim is based." R. 4:64-2(a). Where an original is unavailable, "[a] legible copy of a recorded or filed document, certified as a true copy . . . by a New Jersey attorney" may be produced in lieu of an original document. Id. Further, "[i]n the absence of special equities, the amount of interest

---

[5]   Rule 4:64-1 has been recently amended, thereby significantly altering this subsection. Those amendments, however, do not become effective until September 1, 2010. See Order of the New Jersey Supreme Court dated July 23, 2010.

to be included in a judgment, including any default rate, shall be calculated at the rate set forth in the evidence of the debt." <u>Obtaining Final Judgment in Foreclosure</u>, 21 NJPRAC § 33:36 (Rev. 3d ed.).

New Jersey additionally provides for the awarding of attorneys' fees to the foreclosing plaintiff in specified amounts:

> In an action for the foreclosure of a mortgage, the allowance shall be calculated as follows: on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3 1/2 %, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1 1/2 %; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitations of this rule.

R. 4:42-9 (a)(4).

*Analysis*

As an initial matter, Plaintiff questions whether it must abide by the Fair Foreclosure Act, because that Act applies only to residential mortgages. <u>See</u> N.J.S.A. 2A:50-62. In my view, this mortgage is subject to the Fair Foreclosure Act, despite the commercial nature of the loan, because it is secured by a residential property. <u>Compare</u> N.J.S.A. 2A:50-55 (defining "residential mortgage" as "a mortgage, security interest or the like, in which the security is a residential property such as a house ....") <u>with id.</u> (defining "non-residential mortgage" as "a mortgage, security interest or the like which is not a residential mortgage. If a mortgage document includes separate tracts or properties, those portions of the mortgage document covering the non-residential tracts or properties shall be a non-residential mortgage."). In addition, a New Jersey Appellate decision expressly holds the Act applicable to commercial

loans secured by interest on a residential property, provided the mortgagor resided in the property on the date of encumbrance. Bank v. Kim, 361 N.J.Super. 331, 343 (App. Div. 2003). Here, while the loan was commercial in nature, it was secured by interest on a residential property in which the Rottenbergs' lived at the time of the mortgage transaction. See id. at 344 ("[The] FFA does not exclude debts secured for business or commercial purposes from its provisions."). Thus, I conclude that the Fair Foreclosure Act applies.

Regarding Plaintiff's compliance with the Act, I conclude that Plaintiff has complied with the dictates of New Jersey's Fair Foreclosure Act by mailing out the requisite 30-day and 14-day notices. Further, the Rottenbergs' response to Plaintiff's 14-day notice was insufficient under N.J.S.A. 20:50-58. Under that statutory provision, a response from the debtor that complies with the statutory language will preclude the lender from procuring final judgment. To comply with the statute, the debtor letter must "*certif[y]* as true that there is a reasonable likelihood that the debtor will be able to provide payment necessary to cure the default within 45 days of the date ...." N.J.S.A. 20:50-58(a)(2); N.J.S.A. 20:50-58(b)(2) (emphasis added). Contrary to the plain language of the statute, the Rottenbeg's letter was not certified. Moreover, the letter states that the Rottenbergs' believed they would be able to "make the payments on the loan" in 45 days, rather than stating that they "will be able . . . to cure the default ....," as required by the statutory language. Accordingly, the Rottenbergs' letter did not comply with the statutory language and is not an impediment to Plaintiff's request for judgment.

The Court now turns to whether the amount sought by Plaintiff is supported by the documentary evidence presented to the Court. Plaintiff has provided the Court with copies of the initial mortgage and the Mortgage Modification Agreement, which copies have been certified to be true copies by a New Jersey attorney in accordance with New Jersey Court Rule 4:64-2(a).

See Greenberg Certification/Declaration dated August 18, 2010, ¶ 2. The MMA "modifie[d] and relate[d] back" to the initial mortgage, adding to the original sum. Zucker Decl., Exh. E. So, per the MMA, the Rottenbergs agreed to pay a total of $750,000 in principal on the mortgage. Id.

The Rabbinical Court Ruling, however, concluded that Zucker's total investment was for only $700,000, and that he had received $283,000 toward that balance. The court, further, ruled that the remaining balance of $417,000 was subject to interest under the parties' agreement. Calculating the interest at $412,493, the court adjudged the total amount due as $829,493. Lastly, the court held that additional interest of 10% from September 22, 2009 onward was due.

Because the MMA provides that the Rabbinical Court's decision "shall be final, binding and enforceable," this Court is bound by that court's assessment of the amount due under the mortgage agreement. See Elmora Hebrew Center, Inc. v. Fishman, 125 N.J. 404, 417-18 (1991) (holding that party who executed a written arbitration agreement consenting to the jurisdiction of a Rabbinical Court "should be bound to observe [that court's] determination of any issues that [the party] agreed to submit to that tribunal."). Where, as here, there are no allegations of "fraud, collusion, or arbitrariness," id. at 418, New Jersey courts do not hesitate to enforce orders of a Rabbinical Court. See e.g., Schwarcz v. Zik, 273 N.J.Super. 78, 83 (Ch. Div. 1993) (enforcing child support judgment by Rabbinical Court). The record indicates that the Rottenbergs willingly consented to the jurisdiction of the Rabbinical Court, making its judgment binding here. Thus, based on the Rabbinical Court Ruling, I find that Zucker is entitled to the sum of $829,493 plus 10% interest accruing as of September 22, 2009.[6]

---

[6]     Sovereign Bank has filed a non-contesting answer seeking to affix the amount due it. Where there are additional encumbrances on the property, as is the case here, "[a] party holding a subsequent encumbrance for a sum certain and filing an uncontesting answer may have the encumbrance included for payment in the foreclosure judgment on the filing of proofs pursuant to R. 4:64-2." R. 4:64-1(e). "With respect to establishing the priorities between

11

I, finally, conclude that Zucker is entitled to attorney's fees. According to New Jersey Court Rule 4:42-9, attorney's fees may be recovered per the following method of calculation:

> On all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3.5%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1.5%; and upon the excess over $10,000 at the rate of 1%, provided that in no case shall the allowance exceed $7,500, except upon application supported by affidavit of services.

R. 4:42-9(a)(4). In accordance with this language, Plaintiff's counsel seeks the maximum of $7,500 permitted by the rule. The rule permits 1% of any amount over the first $10,000. Here, the amount adjudged to be paid the plaintiff is $829,493, and $829,493 minus $10,000 is $819,493. One percent of that amount is $8,194.93, which exceeds the $7,500 maximum. Thus, the attorney's fees request for the $7,500 maximum is proper and is hereby granted. Also proper is Plaintiff's counsel's requests for costs, which I conclude complies with Rule 4:42-8. See Greenberg Cert. at ¶ 6 (detailing costs in reasonable amounts).

CONCLUSION

For the foregoing reasons, the Court grants Zucker's motion for final judgment on the foreclosure complaint. In accordance with Rule 4:64-1(d), the Court will enter an order for final judgment.

---

[multiple] subsequent encumbrancers, a judgment by default may not be entered against a defendant subordinating that defendant's claim to that of any other defendant, unless the priority of the claim of the latter, and the facts upon which the claim depends, are distinctly set forth in the pleadings." Obtaining Final Judgment in Foreclosure, 21 NJPRAC § 33:36 (Rev. 3d ed.). If there is a dispute between encumbrancers, such a dispute must be "settled upon an application for surplus monies pursuant to Rule 4:64-3." Id. Here, Sovereign does not challenge the priority of Plaintiff's mortgage on the property but seeks only to recover on its lien if there are funds remaining after Plaintiff's judgment is paid. Thus, in accordance with Rule 4:64-1(e), Sovereign Bank's request will be settled upon an application for surplus monies, should there be any deposited with the Court.

Date:   August 23, 2010

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson, U.S.D.J